UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

DEBORAH JEANE PALFREY,

          Plaintiff,

vs.

PAULA NEBLE *et al*,

          Defendants.

_____/

Case No.:1:07-cv-461-JR

**MOTION TO ENTER STAY ORDER**

Plaintiff, Deborah Jeane Palfrey, by and through her undersigned counsel, moves this Court to enter its order staying this action in this matter, and for grounds in support thereof states:

1. To date, this matter has not progressed to service since the filing of this matter on March 9, 2007.

2. On November 21, 2007, this Court entered its order staying this matter until the conclusion of the related criminal case, *U.S. v. Palfrey*, Case No.: 07-cr-046-JR. A copy of that order is attached.

3. That Order was <u>only</u> filed in Case No.: 07-cr-046-JR and not in this matter.

4. Clearly, in order to permit the Plaintiff to appeal this stay, that order must be filed in this matter. Indeed, the Clerk has so advised after attempts to file the stay order.

5. As the stay has precluded service on the Defendant, there is no one to serve a copy of this motion at this time.

WHEREFORE, Plaintiff requests that this Court enter the stay order issued in Case No.: 07-cr-046-JR in this matter.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | **Criminal Case No. 07-46 (GK)** |
| | : | |
| DEBORAH JEANE PALFREY, | : | **FILED** |
| | : | |
| Defendant. | : | NOV 2 1 2007 |

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

### MEMORANDUM ORDER

On March 16, 2007, the Court entered a TRO in this case [Dkt. #12] upon the *ex parte* application of the Government pursuant to 18 U.S.C. § 1512, et seq., known as the Victim and Witness Protection Act of 1982. The TRO restrained Defendant and her agents and attorneys from proceeding in the related civil case, Palfrey v. Neble, No. 07-461 (D.D.C. filed March 9, 2007), and from engaging in similar acts.[1] The Court held a hearing on March 19, 2007, at which time it unsealed the Government's application and the Government presented at a bench conference "its perception of Mr. Sibley's threats to 'out' and embarrass [Government] witnesses." Govt's Opp'n [Dkt. No. 117] at 13.[2] The Court continued the hearing until March 22, 2007, to permit Defendant's counsel to consider the Government's unsealed application. Defendant's counsel indicated no

---

[1] The Court also entered a TRO pursuant to 18 U.S.C. §§ 982(b)(1) and 1963(b)(1), and 21 U.S.C. § 853(e)(1). On July 5, 2007, the Court granted Defendant's motion to quash the portion of the TRO concerning a list of telephone numbers in her possession [Dkt. #74]. That portion of the TRO is not at issue in the instant Motion.

[2] The Government cited as evidence of harassment Defendant's filing of a civil suit against a single known potential Government witness.

objection at the March 22, 2007 hearing, and the Court converted the TRO into a Protective Order to "remain in effect if and until modified by the Court" [Dkt. #17].[3]

Defendant has now moved to dissolve the Temporary Restraining Order ("TROs") entered on March 16, 2007 and the Protective Order entered on March 22, 2007. Defendant's present Motion was one of the 13 requests included in Defendant's First Omnibus Motion [Dkt. #106]. On October 18, 2007, the Court decided Defendant's First Omnibus Motion [Dkt #136 & #137], but deferred ruling on the instant dissolution Motion until after the presentation of oral argument. Oral argument was heard at an October 22, 2007 Status Conference and, thereafter, on November 1, 2007, the Court granted Defendant's request for a hearing [Dkt. #153].

Upon consideration of the extensive pleadings and record in this case, including the present Motion, Opposition, and Reply, the arguments presented in open court on October 22, 2007, the arguments presented in an on-the-record telephone discussion with counsel on November 19, 2007, and the witness lists filed in preparation for the hearing which the November 1, 2007 Order scheduled for November 28, 2007, the Court concludes, for the following reasons, that the Defendant's Motion to dissolve the Temporary Restraining Order and the Protective Order is **denied**; consequently, there no longer exists any need for a hearing on November 28, 2007, and that hearing is **cancelled**.

4. The Court's rulings granting the TROs and Protective Order relied on 18 U.S.C. § 1514. They did not reach the Government's arguments based upon the inherent authority of the courts to manage their own affairs. Given the fact that there is now substantial doubt as to whether

---

[3] Since the Court converted the March 16, 2007 TRO into a Protective Order on March 22, 2007, the Court considers only Defendant's challenge to the Protective Order.

the Government can satisfy the requirements of Section 1514, the Court will turn to the issue of whether it possesses inherent authority to enter and maintain the Protective Order.[4]

5. In <u>Chambers v. Nasco Co., Inc.</u>, 501 U.S. 32 (1991), the Supreme Court explained that

> It has long been understood that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed within a Court, because they are necessary to the exercise of all others." <u>United States v. Hudson</u>, 7 Cranch 32, 34, 3 L.Ed. 259 (1812); *see also* <u>Roadway Express, Inc. v. Piper</u>, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (citing <u>Hudson</u>). For this reason, "Courts of justice are universally acknowledged to be vested by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." <u>Anderson v. Dunn</u>, 6 Wheat. 204, 227, 5 L.Ed 242 (1821); *see also* <u>Ex parte Robinson</u>, 19 Wall. 505, 510, 22 L.Ed. 205 (1874). These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." <u>Link v. Wabash R. Co.</u>, 370 U.S. 626, 630-631, 82 S.Ct. 1386, 1388-1389, 8 L.Ed.2d 734 (1962).

501 U.S. at 43.

The Court went on to outline in great detail the scope of the inherent powers of the federal courts. It rejected the idea that any existing scheme of statutes and/or rules could displace the inherent power of the courts or could substitute for the courts' authority "to manage [their] own

---

[4] In the November 19, 2007 on-the-record telephone discussion with counsel, the Government indicated that it would have only one witness at the November 28, 2007 hearing, and that that person would present <u>only</u> hearsay testimony to support the Government's argument, pursuant to 18 U.S.C. § 1512 and § 1514(a) and (c), that witnesses were being harassed. While the Government is correct that there is no absolute bar to the presentation of hearsay testimony under the Victim and Witness Protection Act, case law strongly suggests that such testimony is disfavored. <u>United States v. Lewis</u>, 411 F.3d 838, 846 (7th Cir. 2005); <u>United States v. Carmichael</u>, 326 F.Supp.2d 1267, 1275-76, 1301 (M.D. Ala. 2004) The statute requires a showing that "an identified victim or witness" is being harassed, and harassment is defined as "a course of conduct . . . that -- (A) causes substantial emotional distress." 18 U.S.C. §§ 1514(a)(1), 1514(c)(1). It is difficult to imagine how mere hearsay evidence could satisfy this statutory evidentiary standard and it is equally difficult to understand how the declarant's testimony could be cross-examined.

affairs so as to achieve the orderly and expeditious disposition of cases." Link v. Wabash R. Co., 370 U.S. 626, 630-31 (1962). In sum, the Supreme Court reaffirmed its prior rulings "that the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." Chambers, 501 U.S. at 49.

Finally, under Chambers and Landis v. North American Co., 299 U.S. 248, 254 (1936), it is perfectly clear that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."

7. In granting the original request for a Temporary Restraining Order, the Court found that "it is apparent that Defendant is pursuing the Neble case in order to obtain from those civil defendants discovery to which she would not be entitled in her criminal case" [Dkt. #12]. What was merely "apparent" to the Court on March 16, 2007 when that finding was made has only become starkly clearer in the subsequent eight months.[5] In both United States v. Lewis, supra, and United States v. Tison, 780 F.2d 1569 (11th Cir. 1986), different Courts of Appeals found that filing civil cases in pursuit of discovery to which the defendant would not be entitled in the related criminal case is not legitimate. As the Court of Appeals noted in Tison:

> A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and

---

[5] The witness lists filed by Defendant for the November 28, 2007 hearing are a good example. Among those Defendant has listed and attempted to subpoena is a United States Senator, who has already publicly admitted to having used her escort service seven or eight years ago, another individual who used her services, an attorney whose client Defendant is trying to subpoena, an Assistant United States Attorney handling this case, and the defendant in the related civil case. Obviously, this witness list demonstrates that Defendant has no intention of adhering to the specific limited purpose for which the hearing was set -- whether the Protective Order should be dissolved -- but rather plans to use the hearing as an alternative (and improper) means of obtaining discovery.

> thereby obtain documents he would not otherwise be entitled to for use in his criminal suit. Judicial discretion and procedural flexibility should be utilized to harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other. Campbell v. Eastland, 307 F.2d 478, 487 (5th Cir. 1962), cert. denied, 371 U.S. 955, 88 S.Ct. 502, 9 L.Ed.2d 502 (1963).

United States v. Tison, 780 F.2d at 1572.

That is precisely what Defendant seeks to do in this case. In short, Defendant seeks to utilize the more liberal discovery provisions of the Federal Rules of Civil Procedure to circumvent and "end run" the more restrictive discovery provisions in the Federal Rules of Criminal Procedure. For that reason, it is perfectly appropriate and reasonable for this Court, in the exercise of its inherent authority to "manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases," to maintain the existing Protective Order restraining Defendant and her agents and attorneys from proceeding in Palfrey v. Neble, Civil Action No. 07-0461 (GK).[6]

**WHEREFORE**, it is this 21st day of November, 2007, hereby

**ORDERED**, that Defendant's request to dissolve the Temporary Restraining Order entered on March 16, 2007 and the Protective Order entered on March 22, 2007, is **denied**; and it is further

---

[6] It should be noted that Defendant will suffer little or no prejudice to her civil suit by the continuation of the Protective Order. The criminal case will be going to trial in early to mid-2008. Defendant is represented by the same counsel in both cases, and therefore all the information and knowledge he obtains in litigating the criminal case can be usefully and economically applied to his handling of the civil case.

**ORDERED**, that the hearing scheduled for November 28, 2007 is hereby **cancelled**.

_/s/ Gladys Kessler_
Gladys Kessler
United States District Judge

**Copies via ECF to all counsel of record**

>**MONTGOMERY BLAIR SIBLEY**
>Counsel for Plaintiff
>1629 K Street, Suite 300
>Washington, D.C. 20006
>202-508-3699
>202-478-0371 Fax
>
>By: /s/ Montgomery Blair Sibley
>        Montgomery Blair Sibley
>        D.C. Bar #464488

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

DEBORAH JEANE PALFREY,

        Plaintiff,

vs.

PAULA NEBLE *et al*,

        Defendants.
_____/

Case No.:1:07-cv-461-JR

ORDER ON MOTION TO ENTER STAY ORDER

Upon consideration of Plaintiff's Motion to Enter Stay Order it is:

ORDERED that the Motion is Granted for the reasons stated in the attached Order in Case No.: 07-cr-046-JR. a copy of which is attached.

DATED: January ___, 2008

                                                          _____
                                                          THE HONORABLE JAMES ROBERTSON
                                                          UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,  :
                           :
v.                         :   Criminal Case No. 07-46 (GK)
                           :
DEBORAH JEANE PALFREY,     :
                           :
Defendant.                 :

**FILED**

NOV 2 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

### MEMORANDUM ORDER

On March 16, 2007, the Court entered a TRO in this case [Dkt. #12] upon the *ex parte* application of the Government pursuant to 18 U.S.C. § 1512, et seq., known as the Victim and Witness Protection Act of 1982. The TRO restrained Defendant and her agents and attorneys from proceeding in the related civil case, Palfrey v. Neble, No. 07-461 (D.D.C. filed March 9, 2007), and from engaging in similar acts.[1] The Court held a hearing on March 19, 2007, at which time it unsealed the Government's application and the Government presented at a bench conference "its perception of Mr. Sibley's threats to 'out' and embarrass [Government] witnesses." Govt's Opp'n [Dkt. No. 117] at 13.[2] The Court continued the hearing until March 22, 2007, to permit Defendant's counsel to consider the Government's unsealed application. Defendant's counsel indicated no

---

[1] The Court also entered a TRO pursuant to 18 U.S.C. §§ 982(b)(1) and 1963(b)(1), and 21 U.S.C. § 853(e)(1). On July 5, 2007, the Court granted Defendant's motion to quash the portion of the TRO concerning a list of telephone numbers in her possession [Dkt. #74]. That portion of the TRO is not at issue in the instant Motion.

[2] The Government cited as evidence of harassment Defendant's filing of a civil suit against a single known potential Government witness.

objection at the March 22, 2007 hearing, and the Court converted the TRO into a Protective Order to "remain in effect if and until modified by the Court" [Dkt. #17].[3]

Defendant has now moved to dissolve the Temporary Restraining Order ("TROs") entered on March 16, 2007 and the Protective Order entered on March 22, 2007. Defendant's present Motion was one of the 13 requests included in Defendant's First Omnibus Motion [Dkt. #106]. On October 18, 2007, the Court decided Defendant's First Omnibus Motion [Dkt #136 & #137], but deferred ruling on the instant dissolution Motion until after the presentation of oral argument. Oral argument was heard at an October 22, 2007 Status Conference and, thereafter, on November 1, 2007, the Court granted Defendant's request for a hearing [Dkt. #153].

Upon consideration of the extensive pleadings and record in this case, including the present Motion, Opposition, and Reply, the arguments presented in open court on October 22, 2007, the arguments presented in an on-the-record telephone discussion with counsel on November 19, 2007, and the witness lists filed in preparation for the hearing which the November 1, 2007 Order scheduled for November 28, 2007, the Court concludes, for the following reasons, that the Defendant's Motion to dissolve the Temporary Restraining Order and the Protective Order is **denied**; consequently, there no longer exists any need for a hearing on November 28, 2007, and that hearing is **cancelled**.

4. The Court's rulings granting the TROs and Protective Order relied on 18 U.S.C. § 1514. They did not reach the Government's arguments based upon the inherent authority of the courts to manage their own affairs. Given the fact that there is now substantial doubt as to whether

---

[3] Since the Court converted the March 16, 2007 TRO into a Protective Order on March 22, 2007, the Court considers only Defendant's challenge to the Protective Order.

the Government can satisfy the requirements of Section 1514, the Court will turn to the issue of whether it possesses inherent authority to enter and maintain the Protective Order.[4]

5.      In Chambers v. Nasco Co., Inc., 501 U.S. 32 (1991), the Supreme Court explained that

> It has long been understood that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed within a Court, because they are necessary to the exercise of all others." United States v. Hudson, 7 Cranch 32, 34, 3 L.Ed. 259 (1812); *see also* Roadway Express, Inc. v. Piper, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (citing Hudson). For this reason, "Courts of justice are universally acknowledged to be vested by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." Anderson v. Dunn, 6 Wheat. 204, 227, 5 L.Ed 242 (1821); *see also* Ex parte Robinson, 19 Wall. 505, 510, 22 L.Ed. 205 (1874). These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Link v. Wabash R. Co., 370 U.S. 626, 630-631, 82 S.Ct. 1386, 1388-1389, 8 L.Ed.2d 734 (1962).

501 U.S. at 43.

The Court went on to outline in great detail the scope of the inherent powers of the federal courts. It rejected the idea that any existing scheme of statutes and/or rules could displace the inherent power of the courts or could substitute for the courts' authority "to manage [their] own

---

[4]     In the November 19, 2007 on-the-record telephone discussion with counsel, the Government indicated that it would have only one witness at the November 28, 2007 hearing, and that that person would present only hearsay testimony to support the Government's argument, pursuant to 18 U.S.C. § 1512 and § 1514(a) and (c), that witnesses were being harassed. While the Government is correct that there is no absolute bar to the presentation of hearsay testimony under the Victim and Witness Protection Act, case law strongly suggests that such testimony is disfavored. United States v. Lewis, 411 F.3d 838, 846 (7th Cir. 2005); United States v. Carmichael, 326 F.Supp.2d 1267, 1275-76, 1301 (M.D. Ala. 2004) The statute requires a showing that "an identified victim or witness" is being harassed, and harassment is defined as "a course of conduct . . . that -- (A) causes substantial emotional distress." 18 U.S.C. §§ 1514(a)(1), 1514(c)(1). It is difficult to imagine how mere hearsay evidence could satisfy this statutory evidentiary standard and it is equally difficult to understand how the declarant's testimony could be cross-examined.

affairs so as to achieve the orderly and expeditious disposition of cases." Link v. Wabash R. Co., 370 U.S. 626, 630-31 (1962). In sum, the Supreme Court reaffirmed its prior rulings "that the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." Chambers, 501 U.S. at 49.

Finally, under Chambers and Landis v. North American Co., 299 U.S. 248, 254 (1936), it is perfectly clear that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."

7. In granting the original request for a Temporary Restraining Order, the Court found that "it is apparent that Defendant is pursuing the Neble case in order to obtain from those civil defendants discovery to which she would not be entitled in her criminal case" [Dkt. #12]. What was merely "apparent" to the Court on March 16, 2007 when that finding was made has only become starkly clearer in the subsequent eight months.[5] In both United States v. Lewis, supra, and United States v. Tison, 780 F.2d 1569 (11th Cir. 1986), different Courts of Appeals found that filing civil cases in pursuit of discovery to which the defendant would not be entitled in the related criminal case is not legitimate. As the Court of Appeals noted in Tison:

> A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and

---

[5] The witness lists filed by Defendant for the November 28, 2007 hearing are a good example. Among those Defendant has listed and attempted to subpoena is a United States Senator, who has already publicly admitted to having used her escort service seven or eight years ago, another individual who used her services, an attorney whose client Defendant is trying to subpoena, an Assistant United States Attorney handling this case, and the defendant in the related civil case. Obviously, this witness list demonstrates that Defendant has no intention of adhering to the specific limited purpose for which the hearing was set -- whether the Protective Order should be dissolved -- but rather plans to use the hearing as an alternative (and improper) means of obtaining discovery.

>thereby obtain documents he would not otherwise be entitled to for use in his criminal suit. Judicial discretion and procedural flexibility should be utilized to harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other. Campbell v. Eastland, 307 F.2d 478, 487 (5th Cir. 1962), cert. denied, 371 U.S. 955, 88 S.Ct. 502, 9 L.Ed.2d 502 (1963).

United States v. Tison, 780 F.2d at 1572.

That is precisely what Defendant seeks to do in this case. In short, Defendant seeks to utilize the more liberal discovery provisions of the Federal Rules of Civil Procedure to circumvent and "end run" the more restrictive discovery provisions in the Federal Rules of Criminal Procedure. For that reason, it is perfectly appropriate and reasonable for this Court, in the exercise of its inherent authority to "manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases," to maintain the existing Protective Order restraining Defendant and her agents and attorneys from proceeding in Palfrey v. Neble, Civil Action No. 07-0461 (GK).[6]

**WHEREFORE**, it is this 21st day of November, 2007, hereby

**ORDERED**, that Defendant's request to dissolve the Temporary Restraining Order entered on March 16, 2007 and the Protective Order entered on March 22, 2007, is **denied**; and it is further

---

[6] It should be noted that Defendant will suffer little or no prejudice to her civil suit by the continuation of the Protective Order. The criminal case will be going to trial in early to mid-2008. Defendant is represented by the same counsel in both cases, and therefore all the information and knowledge he obtains in litigating the criminal case can be usefully and economically applied to his handling of the civil case.

**ORDERED**, that the hearing scheduled for November 28, 2007 is hereby **cancelled**.

*/s/ Gladys Kessler*
Gladys Kessler
United States District Judge

**Copies via ECF to all counsel of record**